**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: August 28 2015

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 14-30103 |
| | ) | |
| Stephen B. Horace, Sr., and | ) | Chapter 13 |
| Annie F. Horace, | ) | |
| | ) | |
| Debtors. | ) | JUDGE MARY ANN WHIPPLE |

**MEMORANDUM OF DECISION REGARDING MOTION FOR DAMAGES
AND OTHER RELIEF FOR VIOLATION OF THE AUTOMATIC STAY**

This case is before the court on Debtors' Motion for Damages and Other Relief as to Universal Acceptance for Willful Violation of the Automatic Stay. [Doc. # 41]. Debtors seek an order requiring Universal Acceptance ("Creditor") to remove a payment protection device from Debtors' 2004 Chevy Trailblazer and damages for the continued use of the device in violation of the automatic stay. The court held a hearing on the motion at which the parties presented testimony and other evidence in support of their respective positions.

The district court has jurisdiction over this Chapter 13 case pursuant to 28 U.S.C. § 1334(a) as a case under Title 11. It has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Proceedings to determine whether the automatic stay has been violated are core proceedings that the court may hear and determine under 28 U.S.C. § 157(b)(1) and (b)(2)(O).

The court initially addresses the procedural context in which Debtors raise the issue of damages and other relief due to a violation of the automatic stay. Although, with certain exceptions not applicable here, "a proceeding to recover money or property"[1] should be brought as an adversary proceeding rather than by motion, Fed. R. Bankr. P. 7001(1), this requirement is not jurisdictional and may be waived by the party that the requirement seeks to protect, *In re Hatfield 7 Dairy, Inc.*, 425 B.R. 444, 451-52 (Bankr. S.D. Ohio 2010) (citing cases). Moreover, in the absence of any demonstrable prejudice, the Sixth Circuit has found no error resulting from the lack of a formal adversary proceeding. *Hines v. Hines (In re Hines)*, 193 Fed. Appx. 391, 396 (6th Cir. 2006); *see* Fed. R. Civ. P. 61 and Fed. R. Bankr. P. 9005 (providing that the court may disregard all errors and defects that do not affect any party's substantial rights).

Creditor has not objected to the procedural context of Debtors' motion and has not asserted that it has been prejudiced as a result of the lack of an adversary proceeding. Creditor engaged in discovery and, at the hearing, indicated that it was ready to proceed. The court concludes that disregarding any procedural error is warranted as Creditor has effectively waived any procedural defect and no prejudice has resulted from such defect.

This memorandum of decision constitutes the court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable to Debtors' motion by Rules 9014(c) and 7052 of the Federal Rules of Bankruptcy Procedure. Regardless of whether specifically referred to in this memorandum of decision, the court has examined the submitted materials, weighed the credibility of the witnesses, considered all of the evidence, and reviewed the entire record of the case. Based upon that review, and for the reasons discussed below, Debtors' motion will be granted to the extent they seek an order requiring removal of the payment protection device and an award of attorneys' fees as damages.

## FINDINGS OF FACT

In December 2012, Creditor provided financing to Debtors for the purchase of a 2004 Chevy Trailblazer ("the Vehicle"). Debtors were required to make biweekly payments of $168.02 to Creditor. At the time of purchase, Debtors signed an agreement permitting Creditor to cause a PassTime payment assurance device that it owns to be installed in the Vehicle and used by Creditor. When full payment is

---

[1] Given the facts as explained below, the court construes Debtors' request for removal of the payment protection device at issue as an effort to recover their property from Creditor as its payment collection device is part of their motor vehicle.

received by Creditor, it remotely enters a code in the device that allows the Vehicle to operate during the payment period. One day before the due date of the next payment, warning beeps occur. On the due date, the beeping becomes louder and more persistent and, if payment has not been received, the following day the device renders the Vehicle inoperable. Debtors were given a code that they can enter into a remote control after the Vehicle becomes inoperable and that will allow them to operate the Vehicle for twenty-four hours ("the 24-hour code"), after which it again becomes inoperable unless full payment has been made.

Debtors filed their petition for relief under Chapter 13 of the Bankruptcy Code on January 16, 2014. Notice of Debtors' bankruptcy filing was sent to Creditor on January 23, 2014. [*See* Doc. # 8]. There is no dispute that Creditor received notice of the bankruptcy filing.

According to Craig Markley, an assistant manager at Creditor, Debtors always made timely payments through January 2014, generally by money order. Debtors' original Chapter 13 plan filed with their petition did not provide for any payment to Creditor, [Doc. ## 2, 9], and Debtors continued to pay Creditor directly on a biweekly basis until March 2014.

On March 7, 2014, Debtors filed an amended plan that provided for payments to Creditor to be made through the plan. [Doc. # 20, ¶ 4.c.(2)(b)]. Debtors' lawyer served a copy of the proposed amended plan on Creditor. [Doc. ## 21-23]. Thereafter, Debtors stopped paying Creditor directly and, instead, made plan payments to the Chapter 13 Trustee. Debtors subsequently amended their plan four times, each time providing for payment to Creditor through the plan and each time serving a copy of it on Creditor. Debtors' final proposed plan was filed and served on Creditor on August 19, 2014, [Doc. ## 103, 104], and was confirmed on December 18, 2014, [Doc. ## 124-125], after the hearing on Debtors' motion.

Because Debtors had stopped making timely direct payments to Creditor and payments were not being disbursed by the Trustee to creditors before plan confirmation, Debtor Annie Horace ("Horace") testified that continued use of the PassTime device caused the Vehicle to become inoperable on several occasions. On the other hand, according to Markley, to his knowledge, the Vehicle was shut down only on May 6, 2014, and was operational by May 7, 2014. He relies on a PassTime log that sets forth dates through which, he testified, the various codes were effective and the Vehicle was operational. [Creditor Ex. 1]. However, on cross-examination, Markley acknowledged that the device disabled the Vehicle several times after Debtors filed their bankruptcy petition and acknowledged receiving an April 8, 2014, letter from Debtors' attorney regarding the device rendering the Vehicle inoperable. Notwithstanding the log notes, and although Debtor was at times unclear as to exact dates, the court credits Horace's testimony regarding

3

the PassTime device emitting warning sounds that her payment was due and causing her Vehicle to shut down.

On March 24, 2014, one week after Horace had undergone shoulder surgery, the device caused the Vehicle to become inoperable after she had driven it to a physical therapy appointment. Before becoming inoperable, the device's warning sounds had begun alerting her that a payment was due and then that it was past due. However, Horace testified that she did not pay attention to the warning because she had already made her plan payment to the Trustee. Rather than being able to use the valet service that had parked the Vehicle, Horace had to walk to her car in order to enter the 24-hour code on the remote control, after which the Vehicle started and she was able to drive home. Even after the 24-hour code is entered, the PassTime device continues the loud beeping until Creditor receives payment. The next day Debtors made a direct payment to Creditor in order to avoid the Vehicle being shut off again. [*See* Debtor Ex. B].

On April 8, 2014, Horace was at another physical therapy appointment when the device again rendered the Vehicle inoperable. She entered the code, which then allowed her to use the Vehicle, and made another direct payment to Creditor. She also called her attorney, who in turn sent a letter to Creditor dated April 8, 2014, explaining that Debtors' amended plan provided for payment of the obligation owed to Creditor to be made through the plan and that causing Debtors' Vehicle to become inoperable for lack of payment without being granted authority to do so by the court violated the automatic stay. [Debtors' Ex. C]. Markley testified that he received the April 8 letter.

On or about April 21, 2014, after Debtors' son had used the Vehicle to drop Horace off at a physical therapy appointment, he was unable to pick her up because it was again rendered inoperable by the PassTime device. Horace testified that she had to wait for two hours to be picked up by a friend and was experiencing pain during that time. After putting in the 24-hour code, she once again made a direct payment to Creditor.

Continued use of the PassTime device resulted in the Vehicle being rendered inoperable several more times – once in May 2014, after which the instant Motion was filed, and once in both June and August 2014.Markley testified that the Vehicle was shut off in May, after which he spoke with Debtors' attorney and immediately entered a code to get the Vehicle running again. He later called the Chapter 13 Trustee's office to inquire as to when Creditor would begin receiving payments under the plan.

On July 11, 2014, Creditor filed a motion for relief from stay. [Doc. # 85; Debtors' Ex. D]. Although the motion was set for hearing on August 7, 2014, Creditor informed the court that an agreed order was

forthcoming. On September 26, 2014, an agreed order was entered that required, among other things, that Debtors make adequate protection payments directly to Creditor in the amount of $100 per month commencing August 12, 2014, until commencement of payments to Creditor by the Trustee under a confirmed plan. [Doc. # 115]. The agreed order provides that if the adequate protection payment was not received by the fifteenth of the month, Creditor could file an affidavit seeking immediate termination of the stay. [*Id.*]. Because Creditor did not receive an adequate protection payment on August 12, 2014, Markley called Debtors asking for such payment. He was informed by Stephen Horace that Debtors knew nothing about an adequate protection payment agreement. Although the agreed order had not been submitted to the court in August, Markley testified that he believed it had and believed that the stay was terminated when Debtors failed to make an adequate protection payment. He testified that when he was told otherwise by counsel, he "turned the car back on." Thereafter, Creditor entered codes tied to the due date of the next adequate protection payment.

According to Markley, the PassTime device can be shut off only by removal from the Vehicle or by Creditor's entry of a final code. Entry of a final code would render the device permanently inoperable; however, Markley testified that the device would continue to draw on the battery of the Vehicle. Another option is entry of a code that provides for ninety days before warning beeps and shut-off would occur.

## **LAW AND ANALYSIS**

A statutory automatic stay that is applicable to all entities arises upon the filing of a bankruptcy petition. 11 U.S.C. § 362(a). The scope of the stay is broad and operates to enjoin essentially any act, whether the commencement or continuation thereof, by a creditor to collect on a prepetition debt. *Harchar v. Unitest States (In re Harchar)*, 393 B.R. 160, 167 (Bankr. N.D. Ohio 2008). At issue in this case are subsections 362(a)(3) and (a)(6), which provide for a stay of "any act . . . to exercise control over property of the estate" and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(3) & (6).

To enforce creditor compliance with the automatic stay, the Bankruptcy Code provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). In order to prevail on a § 362(k)(1) claim, a plaintiff must prove, by a preponderance of the evidence, that the stay imposed under § 362 was violated, that the violation was committed willfully

and that plaintiff was injured by the violation. *In re Skeen*, 248 B.R. 312, 316 (Bankr. E.D. Tenn. 2000).[2] A willful violation occurs "when the creditor knew of the stay and violated the stay by an intentional act." *Sharon v. TranSouth Fin. Corp. (In re Sharon)*, 234 B.R. 676, 687 (B.A.P. 6th Cir. 1999). It does not require proof of a specific intent to violate the stay, rather, it requires that the acts which violate the stay be intentional. *Id.*; *Lansdale Family Rest., Inc. v. Weiss Food Serv. (In re Lansdale Family Rest., Inc.)*, 977 F.2d 826, 829 (3d Cir. 1992); *Skeen*, 248 B.R. at 317. Indeed, "where the creditor received actual notice of the automatic stay, courts must presume that the violation was deliberate." *Fleet Mortg. Group, Inc. v. Kaneb (In re Kaneb)*, 196 F.3d 265, 269 (1st Cir. 1999).

In this case, Creditor's continued use of the PassTime device violated the provisions of both § 362(a)(3) and (6). To avoid violating § 362(a), a creditor is not only required to refrain from certain activity, but may be required to take affirmative action. *See In re O'Neal*, 165 B.R. 859, 862 (Bankr. M.D. Tenn. 1994) (holding that § 362(a)(3) requires a bank to take steps to discontinue an automatic loan payment from a debtor's checking account); *Sharon*, 234 B.R. at 688 (finding that the creditor violated the automatic stay by failing to return the Chapter 13 debtor's car that it had repossessed prepetition); *Thompson v. Gen'l Motors Acceptance Corp.*, 566 F.3d 699, 703 (7th Cir. 2009)(same). As discussed above, on a bi-weekly basis, the PassTime device emitted warning sounds that Debtors' payment is coming due, which, as one court addressing a similar device observed, "serves no purpose other than to pressure [the debtor] to remit payment" in violation of § 362(a)(6) and "is not unlike that of sending a debtor a monthly statement with a payment coupon." *In re Garner*, No. 09-81998, 2010 WL 890406, *4, 2010 Bankr. LEXIS 721, *11 (Bankr. M.D.N.C. March 9, 2010) (citing *Cousins v. CitiFinancial Mortg. Co, (In re Cousins)*, 404 B.R. 281, 288-89 (Bankr. S.D. Ohio 2009)). By continuing the postpetition use of the device, Creditor also exercises control over property of the estate in violation of § 362(a)(3).[3] *Id.* at *3; *Hampton v. Yam's Choice*

---

[2] Former § 362(h) was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") and recodified as § 362(k)(1). That subsection was not otherwise amended in any respect relevant to this proceeding. The court, therefore, finds the pre-BAPCPA caselaw interpreting § 362(h) cited in this opinion, like *Skeen*, to be relevant in applying post-BAPCPA § 362(k)(1).

[3] Upon case filing, an estate was created, which included "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §§ 541(a), (a)(1) and 1306. The Vehicle became property of the estate upon filing of the case. Subject to exceptions not applicable here, a Chapter 13 debtor remains in possession of all property of the estate. 11 U.S.C. § 1306(b). Upon confirmation, as provided by both the statute, 11 U.S.C. § 1327(b), and Debtors' confirmed plan, [Doc. # 103, ¶11], title to all property of the estate revested in Debtors. The specific acts complained of occurred before confirmation

*Plus Autos, Inc. (In re Hampton)*, 319 B.R. 163, 171 (Bankr. E.D. Ark. 2005) (finding the existence of a similar device on the debtor's car "an overt exercise of control over estate property"). This was particularly evident on the several occasions when Debtors' Vehicle was rendered inoperable.

The court also finds that Creditor's violations of the stay were willful. There is no dispute that it received actual notice of Debtors' bankruptcy case in January 2014. There is also no dispute that Creditor could have, but did not, take steps to terminate the use of the PassTime device in Debtors' Vehicle after receiving such notice.

The court further finds that Debtor Annie Horace was injured by the operation of Creditor's Pass Time collection device every time it beeped post-petition and every time it rendered the vehicle inoperable when she was using it and it should not have. (No testimony as to any injury Stephen Horace suffered was presented.) She was injured in not having available transportation that she was entitled to and needed to have at her disposal but for operation of the Creditor's shutoff collection device. One time Horace could not use the hospital valet because of the device, and another time she had to wait some two hours to get picked up from therapy by a friend because of operation of Creditor's device. Prompted by operation of the device, she also sent Creditor three direct payments that she was not required to make based on the terms of her proposed amended plan(s). The device thus worked to squeeze additional post-petition direct payments from Horace in plain violation of the automatic stay and contrary to the provisions of Debtors' proposed amended plan(s).

Nevertheless, despite Annie Horace's demonstrated injury as a result of Creditor's stay violations, Debtors failed to present evidence of any specific monetary amount of damages caused by the stay violations. To recover actual damages for a willful violation of the stay, a debtor must show the amount of damages with reasonable certainty. *In re Thompson*, 426 B.R. 759, 767-68 (Bankr. N.D. Ill. 2010). Debtors argued only that a "sanction" should be imposed in the amount of $2,500 to cover Horace's "stress" and their attorneys' fees.

As to damages for "stress," Horace testified that the warning sounds emitted by the PassTime device were embarrassing and that the Vehicle was disabled on at least two occasions when she was at physical

---

when the Vehicle was still property of the estate, hence a violation of § 362(a)(3). After confirmation, the stay also protects property of the debtor from enforcement of liens that arose before the commencement of the case. 11 U.S.C. § 362(a)(5). Post-confirmation the continued presence of the operable device on the Vehicle constitutes an act to enforce Creditor's lien against property of the Debtors in violation of § 362(a)(5), as well a continuing act to collect a pre-petition claim against Debtors in violation of § 362(a)(6).

7

therapy and in pain after her shoulder surgery.  However, damages for emotional distress are not normally allowed under § 362(k)(1).  *United States v. Harchar*, 331 B.R. 720, 733 (N.D. Ohio 2005) (J. Wells) (holding that emotional damages are not compensable under § 362(h)). This tenet is partially premised on the speculative nature of emotional distress damages. *McCool v. Beneficial (In re McCool)*, 446 B.R. 819, 824 (Bankr. N.D. Ohio 2010) ("Given the ease in which they can be manufactured, claims for damages based purely on emotional distress are not favored in the law."). This concern is particularly true in the situation before the court where there is no evidence connecting any pain that Horace experienced to anything other than her shoulder surgery and physical therapy and no medical evidence to otherwise substantiate her "stress" claim.  Accordingly, the court declines to enter an award of damages in Horace's favor based solely on Horace's testimony that Creditor's continued use of the PassTime device caused her to be embarrassed.  And although the motion is brought on behalf of both Stephen and Annie Horace, there is also no evidence of, or claim for, any amount of damages with respect to Stephen Horace.

The additional relief sought by Debtors is another matter.  Debtors seek an order requiring Creditor to remove the PassTime device from the Vehicle.  As discussed above, a creditor may be required to take affirmative action to avoid continuing to violate the automatic stay. The court has already determined that the pernicious warning beeps from the PassTime device, as well as disabling of the Vehicle through use of the device, violate the automatic stay.  Although Creditor may be entering codes to prevent the Vehicle from being disabled, Horace testified that the warning beeps have continued.  Because simply entering a final code to completely disable the device will result in the device continuing to draw on the car battery, an order requiring removal of the device from the Vehicle is appropriate.  The device is fundamentally incompatible with a Chapter 13 plan proposing payment of the secured claim by the trustee  through the plan and with the bankruptcy process in general. The court finds that the cost of removal of the PassTime device is a cost of doing business in the manner in which Creditor has chosen and should be borne by Creditor.  *See In re Peterkin*, No. 08-06060-8-ATS, 2009 WL 1076816, *2, 2009 Bankr. LEXIS 4354, *4-5 (Bankr. E.D.N.C. April 16, 2009) (finding that removal of a similar device is the best course and that the cost of removal should be borne by the creditor); *Dawson v. J&B Detail, LLC (In re Dawson)*, Adv. No. 05-1463, 2006 WL 2372821, *8 & 11, 2006 Bankr. LEXIS 4396, *24-25 & 31 (Bankr. N.D. Ohio July 28, 2006) (explaining acceptable steps for effecting removal of a similar device and stating that "the duty to avoid an ongoing violation of the automatic stay rests with the creditor").

As to attorneys' fees, at the evidentiary hearing the court admitted as Creditor's Exhibit 2 a

composite set of certain of Debtors' counsel's fee invoices. The court finds on Exhibit 2 a total of 6.15 hours of time reasonably devoted to the stay violation (.35 on 5/6/14; .50 on 5/7/14; .60 on 5/7/14; 2.00 on 5/9/14; .80 on 5/13/14; .35 on 6/3/14; .85 on 6/13/14; and .70 on 7/30/14). There are other time descriptions involving this matter, but they are either marked No Charge, in display of effective billing judgment by counsel, or lumped with other matters such that the time actually devoted to this matter cannot be determined. The court finds the 6.15 hours shown on Exhibit 2 to be reasonable given that there was discovery involved in trying to resolve the matter once it was brought before the court. The statements reflect an hourly rate of $175.00 (Ex. 2 at unnumbered p.5), which the court also finds to be reasonable, and well within the range of rates that this court knows to be charged in this market by consumer debtors' counsel, *Grine v. Chambers (In re Grine)*, 439 B.R. 461, 474 (Bankr. N.D. Ohio 2010). The fee amount for 6.15 hours of time at $175.00 per hour is $1,076.25, which the court finds to be reasonable in total amount and as damages to Horace caused by Creditor's violation of the automatic stay as provided by § 362(k).

Indeed, the $1,076.25 amount appears understated. Exhibit 2 is clearly not a complete set of invoices. The court notes that the 6.15 hours of time shown on Exhibit 2 does not include, for example, preparations for and presentation of evidence at the evidentiary hearing. In this court's view, such amounts are generally compensable damages under § 362(k), *Grine*, 439 B.R. at 469-71, although there is non-binding authority to the contrary, *e.g., Sternberg v. Johnston*, 595 F.3d 937 (9th Cir. 2009), *cert. denied* 562 U.S. 831 (2010), with which this court disagrees. Also, the court has determined here as a result of counsel's efforts that Debtors are entitled to have the PassTime device removed from their vehicle at Creditor's expense. Litigation was necessary in this instance to afford a complete remedy to Debtors.[4]

Attorneys' fees can be either an element of damages to be proven at trial or a collateral matter to be determined following adjudication of the relevant claims. *Clarke v. Mindis Metals, Inc.*, 99 F.3d 1138, 1996 WL 616677, at *3, 9, 1996 U.S. App. LEXIS 27925, at *11, 23-25 (6th Cir. Oct. 24, 1996)(unpublished table decision). Rule 54(d)(2) of the Federal Rules of Civil Procedure governs procedure for recovering attorneys' fees. It applies in this case under Rules 9014(c) and 7054(b)(2) of the Federal Rules of Bankruptcy Procedure. The procedure for seeking attorneys' fees under Rule 54(d)(2) depends

---

[4]The court notes other examples of apparent stay violations by other creditors appearing in Creditor's Exhibit 2 that were addressed by counsel and for which litigation was not determined necessary to enforce the automatic stay and remedy the violation, again showing good billing judgment in furtherance of effective representation of Debtors.

on whether they are treated as a substantive element of damages to be proven at trial on the merits or a collateral matter. When attorneys' fees are what the Sixth Circuit describes in *Clarke* as a collateral matter, Rule 54(d)(2)(a) provides that "claims for attorneys' fees . . . shall be made by motion . . .filed no later than 14 days after entry of judgment." Fed. R. Civ. P. 54(d)(2)(A). When attorney's fees are an element of damages, Rule 54(d)(2)(A) provides that "[c]laims for attorneys' fees . . . shall be made by motion unless the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial." *Clarke,* 1996 WL 616677, *9, 1996 U.S. App. LEXIS 27925, * 29 ("Typically, attorney's fees are collateral to the merits and are awarded only after the entry of judgment . . . [However, t]he claim for attorney's fees in this case is clearly the sort of claim that was an element of damages to be proved at trial."). As another trial court aptly recognized, this distinction and the procedural differences that flow from it both "bristles with formalistic distinctions" and "contains traps for the unwary." *Rockland Trust Co. v. Computer Associated Int'l, Inc.,* 2008 WL 3824791, *6, 7, 2008 U.S.Dist. LEXIS 61687, at * 20-21(D. Mass. Aug. 1, 2008).

      Section 362(k) is not a typical fee-shifting statute. It does not provide for an award of attorneys' fees, "'it provides for recovery of damages *including* attorney's fees, not damages *and* attorney's fees.'" *In re Siharath*, 285 B.R. 299, 306 (Bankr. D. Minn. 2002)(emphasis original). This court finds that attorneys' fees under § 362(k) are part of the substantive law that requires those fees to be proved at trial. *In re Butts*, 350 B.R. 12, 24, n.12 (Bankr. E.D. Pa. 2006), *aff'd* Civil Action 06-4594, 2007 U.S. Dist. LEXIS 43224 (E.D. Va., June 14, 2007); *Grine*, 439 B.R. at 470-71("An award of fees, like an award of other actual damages under § 362(k), must be proven with reasonable certainty and may not be speculative." [citation omitted]). In stay violation situations debtors typically need counsel to address the problem and to try to get the violation to stop. That was unquestionably true in this case, as Debtors' lawyer had to call Markley to get the Vehicle operable again at least once and write the April 8 letter, which did not ultimately resolve the ongoing problem. Indeed, it is not uncommon that attorneys' fees are often the only injury measurable in money incurred by a debtor, which is partly why Congress has expressly included them in § 362(k) as an element of damages. As such, the court has previously determined that attorney's fees may still be awarded as damages proximately caused by the violation even if, as here, there is a *de minimis* or no additional monetary award proven. *See Grine*, 439 B.R. at 471-72.

      Exhibit 2 is the only evidence in the record relating to attorneys' fees. Debtors' motion does ask for attorneys' fees in an amount "to be presented later," but there was no request at the hearing for leave to

14-30103-maw    Doc 140    FILED 08/28/15    ENTERED 08/28/15 15:36:17    Page 10 of 11

supplement the record to present any such evidence and there was no bifurcation of the issue sought or imposed. *See Pride Hyundai, Inc. v. Chrysler Fin. Co., LLC*, 355 F.Supp. 2d 600 (D.R.I. 2005)(award of attorneys' fees as element of damages denied completely where party's burden of proof not carried at trial absent special procedures for determination of the fees issues); *Lynch v. Sease*, 2006 WL 1206472, 2006 U.S. Dist LEXIS 25756, (E.D. Ky., May 2, 2006)(request for attorneys' fees denied where it was a substantive claim for damages and parties failed to satisfy their burden at trial). *Cf. Capital Asset Research Corp. v. Finnegan*, 216 F.3d 1268 (11th Cir. 2000)(parties agreed during trial to bifurcation of attorney's fee issues for later hearing).[5] In the absence of specific procedures being put in place allowing fees for hearing preparation and presentation to be addressed on a bifurcated basis after the evidentiary hearing, the court will limit counsel's fees to the $1,076.25 amount established by Exhibit 2.

The court will enter a separate order in accordance with this memorandum of decision.

###

.

---

[5] The Seventh Circuit Court of Appeals in *Rissman v. Rissman*, 229 F.3d 586, 588 (7th Cir. 2000), states with respect to attorneys' fees that constitute an element of damages under Rule 54(d)(2)(A) that "[f]ees for work done during the case should be sought after decision, when the prevailing party has been identified and it is possible to quantify the award." It is noteworthy, however, that the court bases this statement on *Finnegan*, where the parties agreed during trial to bifurcation of attorneys' fee issues for later hearing and determination. This court agrees with *Rissman* only to the extent that this approach is based on procedural parameters established, by agreement or otherwise, before or during trial, which did not occur here. Indeed this is one way in which Debtors might have benefitted from a Rule 7001 adversary proceeding. Otherwise, it unnecessarily muddies the question whether a timely motion is also required under Rule 54(d)(2), which one should not be, or otherwise what the post-trial procedure would be.